# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC, *Plaintiff,* v. CISCO SYSTEMS, INC. *Defendant.* | Case No. 2:23-cv-00454 (Lead Case) |
| COBBLESTONE WIRELESS, LLC, *Plaintiff,* v. HEWLETT PACKARD ENTERPRISE COMPANY; ARUBA NETWORKS, LLC. *Defendants.* | Case No. 2:23-cv-00457 (Member Case) |

**PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF**

1

    **A.**    **Preamble: "A method of transmitting information <u>in a wireless communication channel</u> comprising..." (Claim 1)**

In the spirit of compromise and in order to eliminate unnecessary disputes before the Court, Plaintiff withdraws its request for a construction that the preamble of '802 Patent Claim 1 is limiting.

    **B.**    **"first center frequency / second center frequency" (claim 1)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The frequency of the carrier that the baseband signal is upconverted to | Plain and ordinary meaning |

Defendants, despite purpoting to defend the "plain and ordinary meaning" of these claim terms, seek a redefinition: "a frequency at the middle frequency of the frequency range." Dkt. 68 at 11. But the intrinsic record is clear regarding the meaning of "center frequency," rejecting Defendants' redefinition. Dkt. 64 at 6-14. In each of the 90 instances "center frequency" appears in the '802 patent, it consistently means the carrier frequency to which the baseband signal is upconverted. *Id.* The '802 even uses "center frequency" and "carrier frequency" interchangeably, confirming this meaning of "center frequency." *Id.*

Defendants accuse Plaintiff of "import[ing]" limitations from the specification. Dkt. 68 at 9-10. Not so. The claims require a "center frequency"; nothing is being imported. Rather, the issue is what a "center frequency" means, and that is perfectly clear in view of the intrinsic record. Indeed, the Federal Circuit routinely interprets claim terms based on similar analysis in view of the specification, rejecting the argument that it would constitute importing a limitation from the specification. See, e.g., *Enzo Biochem, Inc. v. Applera Corp.*, 780 F.3d 1149, 1156 (Fed. Cir. 2015) (rejecting the allegation of importing limitations from the specification and holding that "[h]ere, we are using the specification to more fully understand what the patentee claimed"); *Flex-*

*Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1361 (Fed. Cir. 2006) ("Such a requirement does not improperly read a limitation from the specification into the claim. Rather, the written description and the drawings make clear" what the claim term means); *Ultimate Pointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 823 (Fed. Cir. 2016) (rejecting the allegation of importing limitations from the specifications, and holding that "the repeated description of the invention as a direct-pointing system, the repeated extolling of the virtues of direct pointing, and the repeated criticism of indirect pointing clearly point to the conclusion that the 'handheld device' … is limited to a direct-pointing device."); *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1349 (Fed. Cir. 2008) (similar); *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1337 (Fed. Cir. 2008) (similar); *see also* Dkt. 64 at 11-14 & n.3 (discussing cases).

Ignoring the vast bulk of the '802's disclosure, Defendants maintain that their understanding of the term is supported by the Figure 4 embodiment. Dkt. 68 at 10. In that embodiment, the "center frequency" changes over time. '802 Patent at 7:19-42. This is done by programming synthesizer 207 to generate different center frequencies at different times, "[a]s illustrated in FIG. 2." *Id.*, 7:48-55. Figure 2, in turn, shows that synthesizer 207 provides the carrier frequencies ($f_1$ and $f_2$) to which the baseband signal is upconverted. *Id.* Fig. 2. Thus, it is clear that the Figure 4 embodiment changes the "center frequency" by changing the up-conversion carrier frequency through synthesizer 207. Defendants argue that in Figure 4, the "center frequency" can be changed "post-up-conversion" and thus "may not be the carrier signal frequency to which the baseband signal was up-converted." Dkt. 68 at 10. There is no support for this assertion. In particular, Defendants' selective quotation omits the patent's language that the change in center frequencies sent to the up-converters "*may result in* a new frequency content 410." '802 Patent at 7:29 (emphasis added). This transition expressly confirms that the "new frequency

content," if any, is caused by the up-conversion process described at 7:24-29, not by some other "post-up-conversion shifting" as Defendnats contend. To be clear, there is no "post-up-conversion shifting" disclosed in the '802 Patent.

Defendants argue that the relevant claims do not expressly recite two up-converters, alluding to the doctrine of claim differentiation. Dkt. 68 at 9-10. But that is beside the point; method claim 1 need not recite structural "up-converters" in order to claim a "center frequency" as understood by a POSITA in light of the patent specification. The '802 Patent is clear what "center frequency" means, and two center frequencies is expressly required in the claims. That two "up-conversions" is not recited there is irrelevant. *See also* Dkt. 64 at 7-8 (discussing the technology).

Defendants' reliance on *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) is unavailing. There, one party sought to construe "spring metal adaptor" to require a "split" in the adaptor. But "[o]nly one of the four embodiments" in the specification had such a split feature (*id.*), unlike here where every instance of "center frequency" in the '802 Patent specification refers to the carrier frequency to which the baseband signal is upconverted. Perhaps more importantly, in *Arlington* claim differentiation confirmed the proposed broad construction: other apparatus claims expressly recited a "split circular spring metal adaptor," confirming the significance of omitting those modifiers from the disputed claim term "spring metal adaptor." *Id.* Here, the presence of additional claims that recite a "center frequency" and also recite consistent structural elements, *i.e.* up-converters, does not contradict that "center frequency" in Claim 1 means the same thing it means throughout the entire patent: the carrier frequency to which the baseband signal is upconverted. The Court should confirm this correct understanding of the claim

scope, and reject Defendants' proposal to redefine the term as any "frequency at the middle frequency of the frequency range."

Dated: November 5, 2024          Respectfully submitted,

/s/ Reza Mirzaie
Marc Fenster
CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Neil A. Rubin
CA State Bar No. 250761
Amy E. Hayden
CA State Bar No. 287026
James Pickens
CA State Bar No. 307474
Christian W. Conkle
CA State Bar No. 306374
Jonathan Ma
CA State Bar No. 312773
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
rak_cobblestone@raklaw.com

Andrea Fair
Ward Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400
andrea@wsfirm.com

**Attorneys for Plaintiff,
Cobblestone Wireless, LLC**

## CERTIFICATE OF SERVICE

I certify that this document is being served upon counsel of record for Defendants on November 5, 2024 via electronic service.

/s/ *Christian W. Conkle*